IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW MEXICO

PAUL BRULE,

           Plaintiff,

v.                                                                    No. 1:10-cv-00835 WPL/WDS

BLUE CROSS and BLUE SHIELD
OF NEW MEXICO, a Division of
HEALTH CARE SERVICE CORPORATION,
a MUTUAL LEGAL RESERVE COMPANY,

           Defendant.

## DEFENDANT'S MOTION AND MEMORANDUM
## TO DISMISS COMPLAINT FOR DAMAGES

Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of New Mexico ("HCSC") hereby moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint for Damages ("Complaint") filed by Plaintiff Paul Brule ("Plaintiff") in the above-captioned action. As established in this motion, the Complaint should be dismissed with prejudice because, even if accepted as true, Plaintiff's factual allegations fail to state a cause of action against HCSC for tortious interference with existing or prospective contractual relations (Count I) and negligence (Count II).

## INTRODUCTION

HCSC provides health insurance policies to individuals and businesses in New Mexico. Some of HCSC's insureds purchase their policies through independent insurance brokers, such as Plaintiff. The gravamen of Plaintiff's Complaint is that HCSC truthfully and accurately set forth the amount of commission he was charging his client – to whom he owed fiduciary duties – on an insurance proposal. The gravamen of this motion is that doing so cannot and should not be grounds for a lawsuit.

Plaintiff alleges that HCSC had been writing health insurance policies for his client, Henry Production, Inc. ("Client"), since the mid-1990s. Complaint ("Compl.") at ¶¶4, 5. In each of those years, Plaintiff received a commission which was paid by the Client. Compl. at ¶¶8, 14, 15. On September 24, 2008, Plaintiff met with the Client's representatives to present the annual health insurance renewal proposal for 2009. Compl. at ¶8. Plaintiff contends that the annual renewal proposals provided to the Client for the previous years did not disclose his commission rate. Compl. at ¶¶8, 14, 18. It is unclear from the allegations of the Complaint whether and to what extent the Client understood and appreciated that Plaintiff's commission was five (5) percent prior to the September 24th meeting, but the resolution of this ambiguity should not impact the outcome of this motion.

Plaintiff further alleges that HCSC's employee who prepared the 2009 renewal proposal included Plaintiff's five percent commission rate at the top of each page of the proposal, and failed to complete the necessary paperwork until the night before Plaintiff was to present the proposal to the Client at the September 24, 2008 meeting. Compl. at ¶¶7, 8. Plaintiff contends that HCSC's alleged delay in preparing the proposal left insufficient time for Plaintiff to: (1) discover that the renewal form stated his commission rate on each page; and (2) take action to prevent disclosure of his commission rate to the Client in this manner. Compl. at ¶¶7, 8, 18. The Client chose not to accept the proposal, and Plaintiff alleges the Client's representative later told him that seeing Plaintiff's commission rate on each page of the renewal proposal caused the Client to shop around for competing quotes and ultimately purchase a policy through another insurance agency charging a lower commission. Compl. at ¶¶9, 10. Plaintiff claims to have lost his commission and long-standing business relationship with the Client as a proximate result of HCSC's conduct. Compl. at ¶¶11, 15, 19.

Plaintiff asserts claims against HCSC for tortious interference with existing or prospective contractual relations (Count I) and negligence (Count II) both of which hinge on the flawed theory that HCSC negligently breached its duty of care to Plaintiff by setting forth the amount of his commission on each page of the 2009 renewal proposal. Even accepting Plaintiff's factual allegations as true, Plaintiff's negligence claim fails because New Mexico does not recognize the legal duty of care alleged in the Complaint. Plaintiff also cannot prove interference with contract, existing or otherwise, because the information provided to the Client was true. His claim of interference with existing contractual relations fails for the additional reason that he does not allege the existence of a contract with which HCSC interfered. Nor can he prove interference with prospective contractual relations because the alleged negligence of HCSC in preparing the renewal proposal does not meet the legal standard for intentional tortious conduct required for proof of this tort. Accordingly, the entire Complaint should be dismissed with prejudice.

**ARGUMENT**

### I. THE LEGAL STANDARD FOR GRANTING HCSC'S RULE 12(B)(6) MOTION TO DISMISS THE COMPLAINT

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "admits all well pleaded facts in the complaint as distinguished from conclusory allegations." *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976). While a complaint attacked by a Rule 12(b)(6) motion does not require detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp v. Twombley*, 550 U.S. 544, 554 (2007) (citation omitted). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be

drawn by the district court that evidence on these material points will be introduced at trial." 3 Wright & Miller, *Federal Practice and Procedure*, § 1216 (3d ed.) (footnote omitted). "[A] statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action" is insufficient. *Id.* (footnote omitted). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief...." 2A Moore's Federal Practice ¶ 12.07 (3d ed.). The court is not required to "conjure up unpled allegations or construe elaborately arcane scripts" to save a complaint. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Further, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Plaintiff's claims for negligence and tortious interference with existing or prospective contractual relations are not viable under this standard, and should be dismissed with prejudice.

## II. THE NEGLIGENCE CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF'S FACTUAL ALLEGATIONS, EVEN IF PROVEN, DO NOT ESTABLISH HCSC'S BREACH OF A LEGAL DUTY OF CARE.

To prevail on his negligence claim, Plaintiff has the burden of proving that HCSC owed him a legal duty of care, that HCSC breached that duty, and that the breach proximately caused his injuries. *See Tafoya v. Seay Bros. Corp.*, 119 N.M. 350, 352, 890 P.2d 803, 805 (1995); *Wilschinsky v. Medina*, 108 N.M. 511, 513, 775 P.2d 713, 715 (1989). Whether HCSC owed Plaintiff a duty is a question of law which requires this Court to determine that Plaintiff was a foreseeable plaintiff and within the zone of danger or harm created by HCSC's actions or inaction. *Calkins v. Cox Estates*, 110 N.M. 59, 61-62, 792 P.2d 36, 38-39 (1990). Generally, a plaintiff is "foreseeable" if a person of ordinary prudence could or should have anticipated that the plaintiff might be injured or harmed by his action or inaction. *Id.* However, it is well

established that "the question of duty is not merely a matter of determining whether a particular plaintiff, a particular event, and a particular injury are foreseeable." *Madrid v. Lincoln Cty. Med. Ctr.*, 121 N.M. 133, 139, 909 P.2d 14, 20 (Ct. App. 1995), *aff'd*, 122 N.M. 269, 923 P.2d 1154 (1996). It is also a policy question focused on whether the alleged obligation of the defendant is one to which the law will give recognition and effect. *Id.*

Plaintiff's negligence claim boils down to the theory that HCSC breached its duty of care to him by: (1) setting out his five percent commission rate on each page of the policy renewal proposal which he presented to the Client at a September 24, 2008 meeting; and (2) failing to provide him with the renewal paperwork until the night before the meeting, thereby giving him insufficient time to notice that the paperwork referenced his commission and remove it before the Client could see it. Compl. at ¶¶6, 7, 8, 18. He further alleges that seeing the commission rate on each page of the renewal proposal caused the Client to decline the proposal and ultimately purchase insurance through a competing agent. Compl. at ¶¶10, 19. It is not clear from Plaintiff's allegations what, if anything, the Client knew about Plaintiff's commission at the time it received the renewal proposal on September 24, 2008. However, there are only two possibilities – either the Client knew or did not know that Plaintiff's commission rate was five percent. Either way, HCSC had no legal duty of care to Plaintiff to give him the opportunity to conceal or obfuscate the disclosure of his commission on each page of the renewal proposal.

<u>If the Client already knew</u> that the insurance renewal quote reflected Plaintiff's five percent commission, then Plaintiff is essentially arguing that HCSC had a legal duty not to disclose information already known to the Client. In other words, Plaintiff believes that even though the Client knew about the commission, HCSC should have reasonably foreseen that the

Client would find a new broker because it saw printed in the paperwork what it already and independently knew. This is illogical and unsupported by law.

The New Mexico Court of Appeals explained in *Talbott v. Roswell Hospital Corp.*, 2008-NMCA-114, ¶16, 144 N.M. 753, 192 P.3d 267 (quoting *Chavez v. Desert Eagle Distrib. Co.*, 2007-NMCA-018, ¶17, 141 N.M. 116, 151 P.3d 77), "[I]f a plaintiff is able to show that the course of events was what one might have 'objectively and reasonably expected to occur'…we will conclude that the plaintiff was foreseeable." However, "[t]he risk must be actual and perceptible, not speculative." *Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 8, 140 N.M. 596, 145 P.3d 76. Here, the alleged risk of harm to Plaintiff – if any – was entirely speculative. No reasonable mind could conclude that HCSC should have foreseen that redundantly printing Plaintiff's commission on one, two, five, or one hundred pages would cause the Client to go elsewhere for its brokerage needs when it already knew that same information. *See Madrid*, 122 N.M. 269, 274-75, 923 P.2d 1154, 1159-60 (1996) ("Courts ought not to be unduly reluctant to reach results consonant with the reasonable reactions of real people as long as basic principles of tort law are preserved, including those that preclude the creation of duties that reasonably thoughtful defendants would not foresee.")

Likewise, <u>if the Client did not know</u> that the insurance renewal quote reflected Plaintiff's five percent commission, the alleged injury to Plaintiff was not reasonably foreseeable to HCSC because, as the Client's comprehensive insurance broker for more than a decade, Compl. at ¶4, Plaintiff was the Client's fiduciary. *See Holland v. Lawless*, 95 N.M. 490, 495, 623 P.2d 1004, 1009 (Ct. App. 1981) ("[W]hen a person agrees to act as broker for one of the parties to a transaction a fiduciary relationship arises between them…."); *Amato v. Rathbun Realty, Inc.*, 98 N.M. 231, 647 P.2d 433 (Ct. App. 1982) ("A broker is a fiduciary, in a position of great trust and

confidence, and must exercise the utmost good faith."). The fiduciary relationship between Plaintiff and the Client obligated Plaintiff to supply material information, including his commission rate, for the Client's guidance in determining whether to accept the proposal. *See Amato, supra*. The notion that HCSC should have reasonably foreseen that Plaintiff had not fulfilled his fiduciary duty by informing the Client of the rate is patently unreasonable and contrary to law. *See id.*; *Talbott, supra*.

Foreseeability alone does not end the inquiry for imposition of a duty. "Policy [also] determines duty." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶7, 134 N.M. 43, 73 P.3d 181 (quoting *Torres v. State*, 119 N.M. 609, 612, 894 P.2d 386, 389 (1995)). "The existence of a tort duty is a policy question that is answered by reference to legal precedent, statutes, and other principles of law." *Id.*; *see Chavez v. Desert Eagle Distrib. Co. of N.M.*, 2007-NMCA-018, ¶7, 141 N.M. 116, 151 P.3d 77, *cert. denied*, 2007-NMCERT-001, 141 N.M. 164, 152 P.3d 151 ("We observe that although foreseeability and policy are both important considerations in a duty analysis, the overarching question for the Court is whether issues of policy trump foreseeability and preclude imposing a duty in a particular case.") (citation omitted). Not only would it be unforeseeable to HCSC that Plaintiff failed to discharge his fiduciary duty to the Client, as a matter of sound public policy and law there can be no duty to assist him in that endeavor regardless of what the Client knew or did not know about Plaintiff's commission. *Cf. Chavez*, 2007-NMCA-018, ¶¶25-29 (declining to impose duty of care on defendant liquor wholesaler based on policy considerations where plaintiffs were injured by drunk driver served alcohol at tribal casino supplied by defendant; "We do not think that Defendants are required to look beyond otherwise lawful sales of alcohol to establishments and determine the appropriateness of an establishment's own policies, particularly where there is no indication that the establishment is

not acting in conformity with applicable laws and ordinances. Such a requirement would necessarily impose unreasonable and uncertain duties on wholesalers that we do not think the legislature intended.") (quotation omitted). Accordingly, because Plaintiff fails to allege sufficient facts to establish the threshold element of his negligence claim, the existence of a legal duty, the claim should be dismissed with prejudice.

### III. PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH EXISTING OR PROSPECTIVE CONTRACTUAL RELATIONS.

New Mexico recognizes tortious interference with existing and prospective contractual relations. *Compare Ettenson v. Burke*, 2001-NMCA-003, ¶14, 130 N.M. 67, 17 P.3d 440 (discussing elements of claim for tortious interference with existing contract) *with M&M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 453-55, 612 P.2d 241, 255-57 (Ct. App. 1980) (setting forth the elements of claim for interference with prospective contractual relations) *and Fikes v. Furst*, 2003-NMSC-033, ¶¶21-23, 134 N.M. 602, 81 P.3d 545 (differentiating between the required elements of the two claims). Plaintiff alleges in Count I that HCSC interfered with both his existing and prospective contractual relations with the Client. However, a generous reading of the Complaint reveals Plaintiff's failure to allege sufficient facts to support either claim.

#### A. Plaintiff Fails To Allege That HCSC Interfered With Existing Or Contractual Relations By Disclosing Untruthful Or Inaccurate Information To The Client.

"There is of course no liability for interference with a contract or with prospective contractual relations on the part of one who merely gives truthful information to another." Restatement (Second) of Torts § 772 cmt. b. Here, Plaintiff alleges that HCSC interfered with both existing and prospective contractual relations merely by disclosing his five percent commission in the policy renewal provided to the Client. The Complaint thus fails to state a

cause of action because there is no allegation that HCSC's disclosure of Plaintiff's commission was in any way untruthful or inaccurate. *See id.*

### B. Plaintiff Fails To Allege That HCSC Intentionally Interfered With Any Contract.

Glaringly and dispositively lacking from Plaintiff's Complaint is any allegation that HCSC's alleged interference with his contractual relations with the Client was <u>intentional</u>. Intent is the *sina qua non* of the tort Plaintiff purports to allege because some lesser form of *mens rea* is not actionable. Restatement (Second) of Torts § 766 cmt. h. ("The essential thing is the intent to cause the result. If the actor does not have the intent, his conduct does not subject him to liability."). Plaintiff's failure to allege intentional interference is thus fatal to his claim.

### C. Plaintiff Cannot Prove Intentional Interference With Existing Contractual Relations Because He Does Not Allege There Was A Contract.

New Mexico courts dictate that "[e]stablishing tortious interference with contract is not easy." *Ettenson*, 2001-NMCA-003, ¶14. In order to prove intentional interference with an existing contract, a plaintiff must establish that the defendant, "without justification or privilege to do so, induces a third person not to perform a contract with another." *Wolf v. Perry*, 65 N.M. 457, 461, 339 P.2d 679, 681 (1959). In *Ettenson*, the New Mexico Court of Appeals clarified the essential elements of intentional interference with an existing contract. Applying those elements here, Plaintiff must prove:

    (1)    The existence of a contract between Plaintiff and the Client;

    (2)    HCSC had knowledge of the contract;

    (3)    Plaintiff was unable to fulfill his contractual obligations;

    (3)    HCSC played an active and substantial part in causing Plaintiff to lose the benefit of the contract;

    (4)    Plaintiff suffered damages resulting from the breach; and

(5)     HCSC induced the breach without justification or privilege to do so.

2001-NMCA-003, ¶14.

The obvious flaw in Plaintiff's claim of tortious interference with <u>existing</u> contractual relations is the absence of a contract. This whole lawsuit hinges on the contention that HCSC's disclosure of Plaintiff's commission rate on each page of the 2009 health insurance renewal proposal scuttled his efforts to consummate the Client's purchase of health insurance for the upcoming year. Compl. at ¶¶10, 14, 15, 18, 19. Thus, HCSC's alleged conduct in relation to preparation of the renewal proposal pertained to <u>prospective</u> rather than <u>existing</u> contractual relations. Nowhere does Plaintiff allege the existence of a contract between him and the Client, or that HCSC interfered with an existing contract. He therefore fails to state a cognizable claim for tortious interference with existing contractual relations. *See Ettenson*, 2001-NMCA-003, ¶14.

### D.     The Alleged Negligent Conduct Of HCSC Does Not Meet The Legal Standard For Intentional Interference With Prospective Contractual Relations.

To prove HCSC's interference with Plaintiff's prospective contractual relations with the Client, Plaintiff must establish that HCSC damaged him by either: (1) intentionally inducing or otherwise causing the Client not to enter into or continue a prospective relation with Plaintiff; or (2) intentionally preventing Plaintiff from acquiring or continuing a prospective relation with the Client. *See M&M Rental Tools, Inc.*, 94 N.M. at 452, 612 P.2d at 244. "New Mexico's cases have consistently recognized that existing contractual relations merit more protection than prospective contracts[,]" and claims for intentional interference with prospective contractual relations are therefore held to a more stringent standard. *Zarr v. Washington Tru Solutions, LLC*, 2009-NMCA-50, ¶15, 146 N.M. 274, 208 P.3d 919 (citing *Fikes v. Furst*, 2003-NMSC-033, ¶¶21-23, 134 N.M. 602, 81 P.3d 545). To prevail on this claim, Plaintiff must also prove

that HCSC's sole motive for intentionally interfering with Plaintiff's prospective contractual relations was to harm Plaintiff, or that HCSC interfered through improper means. *Id.* at ¶6. Plaintiff does not allege that HCSC had any, much less a "sole motive" to harm him. He is thus limited to proving interference through "improper means." *See id.* at ¶¶6-7. However, the means allegedly employed by HCSC were not actionably "improper."

New Mexico recognizes the tort of intentional interference with prospective contractual relations as set forth in the Restatement (Second) of Torts § 766B. *See M&M Rental Tools, Inc.*, 94 N.M. at 452, 612 P.2d at 244. Under New Mexico law:

> The improper means ground for liability is sufficiently governed by the nature of the conduct required to be shown. What may qualify as 'improper means' depends to some degree on context and can include, but is not limited to *predatory behavior, violence, threats or intimidation, deceit or misrepresentation, bribery, economic pressure, unfounded litigation, defamation, unlawful conduct,* and ***perhaps*** *violation of business ethics and customs*.

*Zarr*, 2009-NMCA-50, ¶11 (citing Restatement (Second) of Torts § 767 cmt. c.) (emphasis added). While the Court of Appeals speculated in *Zarr* that improper means could "*perhaps* [include] violation of business ethics and customs[,]" it did not describe the contours of such conduct or affirmatively rule that such conduct was actionable; it just acknowledged the possibility. *Id.* (emphasis added). Even if this Court concludes that such conduct is generally actionable, the allegations of Plaintiff's Complaint do not meet the standard.

The Restatement defines the practices which may meet this standard as intentional "violations of recognized ethical codes for a particular area of business activity or of established customs or practices regarding disapproved actions or methods...." Restatement (Second) of Torts § 767 cmt. a. Merely altering an alleged business practice by showing a commission on each page of an insurance proposal is not a "violation" of a recognized ethical code, custom or practice for a particular business activity as contemplated by the plain language of the

Restatement. *See id.*; *cf. Machine Maintenance & Equip. Co. v. Cooper Indus., Inc.*, 661 F. Supp. 1112, 1116 (E.D. Missouri 1987) (citing comment c to § 767 of the Restatement to conclude that acts which "violate business ethics or customs" are "wrongful" acts; the court held that the jury could have found interference with prospective contractual relations by improper means where defendant terminated distributorship agreement with plaintiff without cause and without requisite 90-day notice so that plaintiff would have difficulty securing an alternative supplier and would, in turn, be unable to serve its customers).

Nor can altering an alleged business practice by reflecting a commission on each page of an insurance proposal constitute interference by "improper means" pursuant to the common sense maxim, *noscitur a sociis*, which literally means "it is known from its associates." Here, the Restatement's reference to "violation of business ethics and customs" is preceded by multiple specific examples of "improper means" such as predatory behavior, violence, threats or intimidation, or defamation, all of which are demonstrably severe, egregious or opprobrious. *See id.* So too then must any actionable deviation from business practices be conduct which is of equally severe, egregious and opprobrious character. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1164 (10th Cir. 1999) (applying *noscitur a sociis* to hold that "reassignment" applies to existing employees because that characteristic clearly applies to the other reasonable accommodations listed in the same paragraph: "That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well") (citation omitted); *see also Jones v. Kansas State Univ.*, 106 P.3d 10, 26-27 (Kan. 2005) (applying *noscitur a sociis* to hold that "gross misconduct" must mean something more than ordinary misconduct given that all of the grounds for discipline around it such as criminal conviction,

immoral conduct, misappropriation of funds, etc., "are of a serious or extreme nature, and the actions are generally intentional and willful").

Plaintiff's allegations do not, therefore, state a claim HCSC's intentional interference with his prospective contractual relations with his Client, and Count I should be dismissed.

## CONCLUSION

For good reason, Plaintiff's allegations are wholly insufficient as a matter of law to state a claim for intentional interference with existing or prospective contractual relations (Count I) or for negligence (Count II). Truthfully and accurately setting forth the commission Plaintiff's fiduciary is paying cannot and should not be actionable – whether the information was recited once, twice or one hundred times in the insurance proposal. HCSC thus requests that Plaintiff's entire Complaint for Damages be dismissed with prejudice, and that this Court award such other and further relief as may be appropriate.

MONTGOMERY & ANDREWS, P.A.

By _____
Jeff L. Martin
Brett J. Olsen
P. O. Box 36210
Albuquerque, NM 87176-6210
(505) 884-4200
(505) 888-8929

Attorneys for HCSC

**Certificate of Service**

I HEREBY CERTIFY that on the 13th day of September, 2010, I caused to be filed the foregoing Defendant's Motion and Memorandum to Dismiss Complaint for Damages electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Timothy L. White, Esq.
Valdez and White Law Firm, LLC
P.O. Box 25646
Albuquerque, NM 87125
Timothylwhitelaw@aol.com

_____
Jeff L. Martin