**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**PAUL BRULE,**

    **Plaintiff,**

vs.                                                       **Case No. 10-CV-835 JP/WDS**

**BLUE CROSS AND BLUE SHIELD**
**OF NEW MEXICO, a division of Health Care**
**Service Corporation, a Mutual Legal**
**Reserve Corporation,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

On September 13, 2010, Defendant Blue Cross And Blue Shield of New Mexico, a division of Health Care Service Corporation ("Defendant") filed Defendant's Motion And Memorandum To Dismiss Complaint For Damages (Doc. No. 9) ("Motion"). On October 6, 2010, Plaintiff Paul Brule ("Plaintiff") filed his Response To Defendant's Motion To Dismiss (Doc. No. 11) ("Response"). On October 20, 2010, Defendant filed Defendant's Reply Memorandum In Support Of Its Motion To Dismiss Complaint (Doc. No. 12) ("Reply").

On July 28, 2010, Plaintiff filed the Complaint (Doc. No. 5) in the Second Judicial District Court, Bernalillo County, New Mexico. On September 9, 2010, Defendant removed the case to this Court under federal diversity jurisdiction 28 U.S.C. § 1332(a).[1] Because Count I of the Complaint fails to state a claim of tortious interference with an existing contract, the Court

---

[1] Defendant received service of the complaint on August 12, 2010, thus, the removal was timely. 28 U.S.C. § 1446(b) (stating that a notice of removal must be filed within thirty days after "the receipt by defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief . . . .").

1

will dismiss that claim. Count I of the Complaint also fails to state a claim of tortious interference with prospective contractual relations; thus, the Court will dismiss that claim. Count II of the Complaint fails to state a plausible claim of negligence; therefore, the Court will dismiss Count II as well.

I.  Facts Alleged in the Complaint

Plaintiff is an independent insurance broker.  For twelve years beginning in the 1990's, Plaintiff sold to Henry Production, Inc. ("Henry Production") "health, dental, vision and related insurance policies" issued by Defendant. Plaintiff received brokerage commissions as compensation for his sales of Defendant's policies. (*Id.* ¶¶ 4-5.) Each year, Plaintiff met with representatives of Henry Production and presented a proposal for renewal of its health insurance policies.  Each year, Defendant prepared written materials describing the terms of renewal, which  were given to Henry Production's representatives at the presentation. (*Id.*  ¶¶ 6-7.)

On September 24, 2008, Plaintiff and a representative of Defendant, Albert Rhodes, presented the 2009 renewal proposal to representatives of Henry Production. Plaintiff alleges that in past years, he had received the written materials for the proposal from Defendant's employee Marlene Sena. In 2008, however, Plaintiff received the materials from Mr. Rhodes. (*Id.* ¶ 7.)  In the past, Ms. Sena had provided Plaintiff with the written materials prior to the client meeting so that Plaintiff could review the materials. (*Id.*)  Plaintiff alleges that Mr. Rhodes completed the written materials the night before the September 24, 2008 meeting and that as a result Plaintiff was unable to review the written materials prior to that meeting. (*Id.*) Plaintiff, Mr. Rhodes, and two Henry Production  representatives, Laura Henry and Anita Peralta, attended the September 24, 2008 meeting. (*Id.*)

Plaintiff alleges that during the meeting, he noticed that "the documents prepared by

[D]efendant set forth, at the top of each of nine pages, that [P]laintiff's commission was five (5) percent." (*Id.* ¶ 8.) Plaintiff alleges that "[s]etting out this information was contrary to [D]efendant's normal business practice and the standard practice in the industry, which was to disclose that information only to [P]laintiff on the renewal-related documents and to give [P]laintiff the option of disclosing that information [to the client] in those documents." (*Id.*) From these allegations, the Court can infer that for the previous twelve years, Plaintiff was able to choose whether or not to disclose his commission rate on the written materials presented to Henry Production.

Plaintiff alleges that during the meeting, "it was obvious that the Henry [Production] representatives were unhappy with the proposal." (*Id.* ¶ 9.) Plaintiff alleges that the representatives' questions and demeanor suggested that "disclosing the commission information in conjunction with a significant rate increase by [D]efendant for the Henry [Production] policy did not meet with their approval." (*Id.*) Henry Production did not renew its insurance policy with Defendant. (*Id.* at ¶ 15.)

After the September 24, 2008 meeting, Ms. Peralta told Plaintiff that Henry Production solicited another quote for health insurance from the Wood Agency and that Henry Production instructed the Wood Agency to present proposals only from insurance companies that paid brokerage commissions of less than five percent. (*Id.* at ¶10.) Plaintiff asserts that as a result of Defendant's actions, he lost a long-standing business relationship with Henry Production and the future commissions that he would have earned. (*Id.* ¶ 11.)

In Count I of the Complaint, Plaintiff asserts that Defendant tortiously interfered with his existing and prospective contractual relationship with Henry Production by disclosing his five percent commission rate on every page of the written materials provided to Henry Production.

3

(*Id.* ¶ 14.) Under New Mexico law, tortious interference with an existing contract and tortious interference with a prospective contract are two separate claims; however, "there is considerable evidentiary overlap between the two causes of action." *Guest v. Berardinelli*, 2008 -NMCA-144, ¶ 32, 145 N.M. 186, 195 P.3d 353. In Count II, Plaintiff asserts a claim of negligence alleging that he lost his contractual relationship with Henry Production because Defendant negligently included Plaintiff's commission rate on the materials "contrary to the reasonable business practice of the industry and [D]efendant's normal business practice." (Compl. ¶ 18.) Also in Count II, Plaintiff asserts that Defendant negligently failed to prepare the materials "in time for [P]laintiff to review them before the meeting, and choose whether to include his commission information," in the materials. (*Id.*)

II. Defendant's Rule 12(b)(6) Motion To Dismiss

A. Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). To survive a motion to dismiss, the complaint must set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, a court may dismiss a complaint when a plaintiff has failed to assert "a claim to relief that is plausible on its face." *Id.* at 570.

B. New Mexico Tort Law

Because this is a diversity jurisdiction case, the Court applies New Mexico's choice-of-

law rules to determine what substantive law governs this tort action. *Pepsi-Cola Bottling Co. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). New Mexico's choice-of-law rule for tort claims is "the doctrine of *lex loci delicti commissi*," or the "law of the place where the wrong occurred." *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 11, 140 N.M. 293, 142 P.3d 374. Thus, the Court will apply the law of New Mexico, where the alleged injury occurred.

In his Response, Plaintiff asserts that he intends to file "a Motion To Certify Questions of State Law to the New Mexico Supreme Court[.]" (Resp. At 2.) However, no motion to certify appears on the docket. Nevertheless, Plaintiff asserts that since Defendant argues in the Motion that New Mexico would not recognize claims for negligence and interference with contractual relations under these facts, this Court should either deny the Motion or defer ruling on the Motion and certify these legal issues to the New Mexico Supreme Court.

In a diversity jurisdiction case, a federal court may either decide what a state court would do or certify the question to the state appellate court for review. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974) (explaining that certification in a given case rests in the discretion of the federal court). Under NMSA 1978, § 39-7-3 (2003), and Rule 12-607, NMRA (2003), a federal court may certify a question of law to the Supreme Court of New Mexico if the question involves dispositive issues of New Mexico law and if there are no controlling precedents from New Mexico appellate courts. *Swink v. Fingado*, 850 P.2d 978, 979 n. 1 (N.M. 1993). However, that is not the situation presented here. The Court has reviewed several opinions from New Mexico appellate courts that provide sufficient guidance to the Court to rule on the Motion. Moreover, this case does not present legal questions that are novel and unsettled. *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990). Hence, the Court will not certify these issues to the New Mexico Supreme Court.

III.  Count I: Tortious Interference Claims

A.  Tortious Interference With An Existing Contract

In New Mexico, to state a claim of tortious interference with an existing contract, a plaintiff must allege that the defendant, "without justification or privilege to do so, induce[d] a third person not to perform a contract with another." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 14, 139 N.M. 637, 137 P.3d 577 (citing, *Wolf v. Perry*, 339 P.2d 679, 681 (N.M. 1959)). In *Ettenson v. Burke*, 2001-NMCA-003, ¶ 14, 130 N.M. 67, 17 P.3d 440, the New Mexico Court of Appeals outlined the following elements of tortious interference with an existing contract: (1) that the defendant had knowledge of the contract; (2) performance of the contract was refused; (3) the defendant played an active and substantial part in causing plaintiff to lose the benefits of the contract; (4) damages flowed from the breached contract; and (5) the defendant induced the breach "without justification or privilege to do so." *Id*. (citing *Wolf*, 339 P.2d at 681-82). The fifth element requires a showing that the defendant acted with an improper motive or used "improper means." *Id.*

Defendant argues that Plaintiff has failed to allege that Defendant's actions in September 2008 interfered with Plaintiff's 2008 contract with Henry Production. Under the allegations of the Complaint, the contract to insure Henry Production that existed in 2008 was not affected by Defendant's actions. This argument, however, assumes that the renewed contract would have been considered a separate "new" contract.[2] Since the Complaint alleges that Defendant would

---

[2] Neither Plaintiff nor Defendant asserts legal or factual support for the proposition that the renewed contract for insurance should be considered an extension of the existing contract. Thus, the Court assumes that the renewed contract is a separate, prospective contract. *See* Lee R. Russ, 2 *Couch on Insurance* § 29:36 (3d ed. 2000) (stating that in some states, a renewed insurance policy is a new contract even if the policy number stays the same, but only if the parties have not specifically designated otherwise).

have charged Henry Production a higher premium amount in the renewed insurance policy, the Court will assume that the renewed policy should be considered a new contract. Defendant's actions could only have interfered with the new insurance policy, which is a prospective contract, not an existing contract. Thus, the Complaint fails to allege a claim of tortious interference with an existing contract, and the Court will dismiss this claim.

### B. Tortious Interference With A Prospective Contract

In *M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 612 P.2d 241 (Ct. App. 1980), the New Mexico Court of Appeals adopted the description of this claim from the Restatement (Second) of Torts § 766B (1979):

> One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
> > (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> > (b) preventing the other from acquiring or continuing the prospective relation.

*Id.* (cited in *M&M Rental Tools*, 612 P.2d at 244). In New Mexico, a plaintiff must also allege that the defendant interfered with a prospective contract with an "improper motive" or through "improper means." *M & M Rental Tools, Inc.*, 612 P.2d at 246. Plaintiff alleges that Defendant interfered with his prospective contract through improper means. (Compl. ¶ 14.)

To show that a defendant used "improper means," a plaintiff is not required to allege that the defendant committed a separate tort. *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, 125 N.M. 748, 965 P.2d 332 (holding that proof of defendant's misrepresentations that plaintiff was going out of business were sufficient for an interference with prospective contract claim without requiring plaintiff to show that the misrepresentations

constituted the tort of defamation). And a plaintiff need not show that the defendant intended to cause harm. *Id.* In *Zarr v. Washington Tru Solutions, LLC*, 2009-NMCA-050, 146 N.M. 274, 208 P.3d 919, the New Mexico Court of Appeals described improper means:

> What may qualify as "improper means" depends to some degree on context and can include, but is not limited to predatory behavior, violence, threats or intimidation, deceit or misrepresentation, bribery, economic pressure, unfounded litigation, defamation, unlawful conduct, and **perhaps violation of business ethics and customs**.

*Id.*, 2009-NMCA-050, ¶ 11 (emphasis added) (citing, *M&M Rental Tools, Inc.*, 612 P.2d at 246 and Restatement (Second) of Torts § 767 comment c)). The Restatement (Second) of Torts further states:

> Violation of recognized ethical codes for a particular area of business activity or of established customs or practices regarding disapproved actions or methods may also be significant in evaluating the nature of the actor's conduct as a factor in determining whether his interference with the plaintiff's contractual relations was improper or not.

Restatement (Second) of Torts ¶ 767, comment c, at 32 (1977).

Plaintiff argues that Defendant used improper means when it disclosed Plaintiff's commission rate on the written renewal proposal materials because Defendant violated its own established business practice and industry standards. Defendant argues that Plaintiff has failed to allege any facts to support this alleged business custom other than to allege that Defendant had not done this in the past. While the New Mexico Court of Appeals stated that improper means could "perhaps" include a violation of business ethics or customs, it did not describe the circumstances under which this type of conduct would be actionable.

However, the Court can ascertain whether Defendant's alleged actions constitute improper means by comparing Defendant's disclosure of Plaintiff's commission to the conduct in New Mexico cases that has been found to be either tortious or non-tortious. For example, in *Schuler v. McGraw-Hill Companies, Inc.,* 989 F. Supp. 1377 (D.N.M. 1997), the court dismissed

a claim for interference with prospective contracts through improper means. The court concluded that plaintiff, the CEO of a corporation, failed to allege a claim against defendants, who published an article containing truthful information about two lawsuits against plaintiff that had been brought by the Securities and Exchange Commission. *Id.* at 1383. Both lawsuits had been resolved by injunctions barring plaintiff from committing additional securities law violations. *Id.* Plaintiff had not admitted or denied the allegations against her; however, she had signed consent decrees ordering the injunctions. *Id.* The *Schuler* court held that "improper means" did not include the publishing of truthful public information about plaintiff. *See id.* at 1391 (stating that improper means included "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.").

The court in *M&M Rental Tools*, stressed that the context in which a defendant acts is important in determining whether a defendant used "improper means." 612 P.2d at 246.  In *M&M Rental Tools*, the defendant, a competitor of plaintiff, had solicited business from plaintiff's customer while the customer was waiting in plaintiff's place of business. *Id.* The court found that defendant's behavior did not constitute improper means and stated, "'[i]t is no tort to beat a business rival to prospective customers. . . in the absence of prohibition by statute, illegitimate means, or some other unlawful element,' a defendant may seek to increase his business without incurring liability." *Id.* (quoting William Prosser, *The Law of Torts* § 130 (West 4th ed. 1971)).  The court in *M&M Rental Tools* described improper means as "predatory means." *Id.* (citing Restatement (Second) of Torts, §  767 comment c. and § 768 comment e.)

On the other hand, the court in *Diversey Corp.* affirmed a damages award for interference with a prospective contract because the claimant, Chem-Source, showed that the representatives of Diversey Corp. executed "an organized and concerted campaign . . . to spread misleading

9

information about Chem-Source . . . to its customers" to convince those customers to switch from Chem-Source to Diversey as their supplier." 965 P.2d at 336. Diversey's representatives had made several false representations to Chem-Source's customers, including representations that Chem-Source was going out of business, that Diversey was going to force Chem-Source out of business, and that Chem-Source was going bankrupt. *Id.*

By comparison, Defendant's inclusion of Plaintiff's commission rate on the written materials given to Henry Production, although damaging to Plaintiff's relationship with Henry Production, is much less severe than the improper behavior found actionable in *Diversey*. The Defendant's behavior is similar to the disclosure of truthful but embarrassing and damaging facts that the *Schuler* court rejected as insufficient to state a claim for interference through improper means.  In contrast to the misrepresentations made in *Diversey*, Defendant's representation of Plaintiff's commission rate was truthful and there are no allegations that the commission rate was disclosed to achieve a competitive advantage.

Plaintiff asks this Court to allow his claim because Defendant's actions violated business practices and industry standards. However, Plaintiff has failed to allege facts describing those business practices or industry standards. Plaintiff simply alleges that Defendant should be liable for its failure to act as it had in the past and for its failure to follow "[s]tandard industry practice [that] does not require disclosing that information [the commission] in that manner." (*See* Compl. ¶ 9.)  Even taking these allegations as true, the alleged behaviors do not constitute interference through "improper means" under New Mexico law. Thus, Plaintiff has failed to state a claim of tortious interference with prospective contractual relations, and the Court will dismiss the claim.

IV. Count II: Negligence

A. Duty of Care

To state a negligence claim, a plaintiff must allege the existence of a duty owed by a defendant, a breach of that duty, which is typically based upon a standard of reasonable care, and that the breach was a proximate cause and cause in fact of the plaintiff's damages. *Herrera v. Quality Pontiac*, 2003 -NMSC- 018, ¶¶ 3-6, 134 N.M. 43, 73 P.3d 181. In the Motion, Defendant argues that the Court should dismiss Plaintiff's negligence claim because Defendant did not breach a legal duty of care.

In New Mexico, whether a duty exists is a question of law for the courts to decide. *Id.* A person has a duty to a plaintiff, if the plaintiff, and the injury to that plaintiff, were foreseeable. *Id.* Generally, a plaintiff is foreseeable if a person of ordinary prudence could or should have anticipated that the plaintiff would be injured or harmed by the person's action. *Calkins v. Cox Estates*, 792 P.2d 36, 38-39 (N.M. 1990). An injury is foreseeable if a defendant's actions began a course of events culminating in an injury that would have been "objectively and reasonably expected to occur." *Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 8, 140 N.M. 596, 145 P.3d 76 (finding that step-daughter's suicide was not foreseeable to step-father and that step-father did not have a duty to secure his gun to prevent suicide).

Even if a court determines that a plaintiff and his injury are foreseeable, a court must also consider the public policy impact of imposing a duty. *Herrera*, 2003-NMSC-018 at ¶ 6. In other words, a court must determine whether the law should recognize the obligation imposed upon a defendant. *Madrid v. Lincoln Cty. Med. Ctr.*, 909 P.2d 14, 20 (N.M. Ct. App. 1995), *aff'd*, 923 P.2d 1154 (N.M. 1996). And, a court should impose a duty only if a plaintiff's interests are entitled to protection. *Id.*

Plaintiff alleges that Defendant had a duty to prepare the written proposal materials without disclosing Plaintiff's commission rate. Plaintiff asserts that Defendant could have fulfilled that duty in one of two ways.  Either 1) Defendant could have printed the commission rate on the materials, but provided the materials to Plaintiff before the meeting so that Plaintiff could have redacted the information from the materials before it was shown to Henry Production; or 2) Defendant could have  excluded the Plaintiff's commission rate from the written materials. Plaintiff alleges that Defendant had a duty not to disclose Plaintiff's commission rate because the disclosure was not customary in the industry; and the disclosure is not required by New Mexico law.  In addition, Plaintiff alleges that non-disclosure had been "Defendant's business practice, in every one of the preceding twelve years." (Resp. at 7.)

Defendant argues that it had no duty to keep confidential Plaintiff's commission rate because it could not have reasonably foreseen that its disclosure of Plaintiff's commission rate, or its failure to provide the materials to Plaintiff in advance, would cause Henry Production to reject the proposal. Defendant further argues that, as a matter of policy, it should not be liable for disclosing Plaintiff's commission rate because Plaintiff, himself, was under a fiduciary duty to disclose his commission rate to Henry Production; and therefore, Defendant could not have predicted or foreseen that disclosure of the commission rate would injure Plaintiff.

B.  Did Plaintiff have a fiduciary duty to disclose his commission rate?

Defendant relies primarily on two cases to support its argument that Plaintiff, as an insurance broker, was Henry Production's fiduciary with a a duty to disclose Plaintiff's own commission rate. In the first case, *Holland v. Lawless*, the plaintiff sued an attorney and an administrator of a decedent's estate for legal malpractice. 623 P.2d 1004 (N.M. 1981). The attorney, who represented the estate, entered into an oral lease of residential property with

12

plaintiff. In a subsequent lawsuit, the probate court dismissed the plaintiff's claim for specific performance of the lease. After the probate decision, the plaintiff brought suit against the attorney and the estate administrator for legal malpractice. *Id.* at 1007. The *Holland* court affirmed a finding that no attorney-client relationship existed between plaintiff and the attorney, and the court concluded that the estate administrator did not act as a broker in the transaction with plaintiff. The court stated as a general proposition, "when a person agrees to act as broker for one of the parties to a transaction a fiduciary relationship arises between them." *Id.* at 1010.

The second case cited by Defendant, *Amato v. Rathbun Realty, Inc.*, involved a suit against a real estate broker for misrepresentation and fraudulent failure to disclose information in connection with the sale of commercial property. 647 P.2d 433, (N.M. Ct. App. 1982). The defendant represented the plaintiffs as their broker in the purchase of an apartment complex. *Id.* at 434. Plaintiffs were informed that the property needed only cosmetic repairs, but shortly after the sale the property was condemned as uninhabitable. *Id.* Defendant denied having knowledge of the condition of the property, and also denied that he represented that the property needed only cosmetic repairs. *Id.* The court held that as a fiduciary, defendant had a duty "to exercise reasonable care or competence in obtaining or communicating information" about observable defects in the property and whether those defects violate applicable zoning or building codes. *Id.* "A broker is a fiduciary, in a position of great trust and confidence, and must exercise the utmost good faith." *Id.*

Defendant asserts that it was unforeseeable that Plaintiff would have failed to fulfill his fiduciary duty to disclose his commission rate; therefore, Defendant should not be liable for disclosing Plaintiff's commission rate. Defendant further argues that as a matter of policy the Court should not impose a duty on Defendant to protect information that Plaintiff was under a

fiduciary duty to disclose.

> In the New Mexico Insurance Code, a "broker" is defined as:
>
> . . . a person generally who, not being an agent of the insurer, as an independent contractor and on behalf of the insured solicits, negotiates or procures insurance or annuity contracts or renewal or continuation thereof for insureds or prospective insureds other than himself[.]

NMSA 1978 § 59A-12-3 (A). A New Mexico insurance broker must be licensed. NMSA 1978 § 59A-11-1 et seq. (1984). However, the State may revoke a broker's license for misrepresentation, fraud, misappropriation of funds, using "fraudulent, coercive or dishonest practices,. . . " showing himself to be "incompetent, untrustworthy, financially irresponsible or a source of injury and loss to the public . . ."; or by not properly serving "the interests of the insureds or the public. . ." NMSA 1978 § 59A-11-14 (A) (2001). Under these statutory provisions, a licensed insurance broker owes a general duty of care to his insured clients, but these provisions do not specifically impose fiduciary responsibilities on insurance brokers.

> However, New Mexico does impose a specific fiduciary duty on licensed brokers to handle premium funds remitted to brokers from clients:
>
> All funds of others received by any person licensed or acting as an insurance agent, broker, solicitor, . . . agent or solicitor for health care plan, prepaid dental plan, or in any similar capacity for which licensing of such person is required under the Insurance Code, are received and held by such person in a **fiduciary capacity**. Any such person who diverts or appropriates such funds to his own use, or takes or secretes with intent to embezzle, all without consent of the person entitled to such funds, is guilty of larceny by embezzlement.

NMSA 1978 § 59A-12-22 (A) (2003) (emphasis added). In addition, under New Mexico common law, an insurance agent or broker, who undertakes to procure insurance for another and through his fault or neglect fails to obtain the insurance, is liable for damages resulting from the failure. *Sappington v. Covington*, 768 P.2d 354, 357 (N.M. Ct. App. 1988).

The Court is not aware of a New Mexico statute or case imposing on an insurance broker a fiduciary duty to disclose his commission to an insured; and the Court is not convinced that New Mexico courts would impose this duty of disclosure on an insurance broker. Resolution of that question is not necessary, however, because the issue here is whether Defendant must protect Plaintiff's right –if such a right exists– not to disclose his commission rate to his client. The Court is not persuaded that New Mexico would impose this responsibility on Defendant apart from an express agreement not to disclose the commission.

C.  Defendant did not owe a duty of non-disclosure

The Court concludes that Defendant owed no duty to protect the confidentiality of Plaintiff's commission rate.  Defendant could not have reasonably foreseen that the disclosure of Plaintiff's commission rate on the written proposal materials would cause Henry Production to reject the proposal.  Plaintiff alleges that the Henry Production representatives found his commission rate in addition to a "significant rate increase by Defendant" unacceptable. Under Plaintiff's allegations, his commission was just one factor in Henry Production's decision to reject the proposed renewal of the insurance policy. It would be unreasonable to expect Defendant to predict that the disclosure of a commission rate would cause rejection considering the many reasons that a business venture, like Henry Production, would choose or reject an insurance policy proposal.

In addition, as a matter of public policy Defendant should not have a duty to protect the confidentiality of Plaintiff's commission rate. As the court stated in *Johnstone*, "[t]o impose a duty, a relationship must exist that legally obligates Defendant to protect Plaintiff's interest." 2006-NMCA-119, ¶ 7, 140 N.M. 596, 145 P.2d 76.  Plaintiff has not alleged that the parties had a confidentiality agreement, and Plaintiff has made only a general, conclusory allegation that

confidentiality of commission rates is an industry standard. Notably, both Defendant's and Plaintiff's economic interests were aligned.  Both parties wanted Henry Production to accept the renewal proposal, and both Plaintiff and Defendant were injured financially by Henry Production's rejection of the proposal.  Defendant needs no common law encouragement to refrain from damaging Plaintiff's reputation. Both Plaintiff and Defendant wanted to maintain Henry Production as an insured. For these reasons, the Court concludes that under New Mexico law, Defendant did not owe a duty not to disclose Plaintiff's commission rate. Without a duty there can be no negligence claim; therefore, the Court will dismiss Count II of the Complaint.

IT IS ORDERED that the Defendant's Motion And Memorandum To Dismiss Complaint For Damages (Doc. No. 9) is granted as follow:

1. The claim of tortious interference with an existing contract will be dismissed with prejudice.

2.  The claim of tortious interference with a prospective contract will be dismissed with prejudice.

3.  The claim of negligence will be dismissed with prejudice.

*James A. Parker*
UNITED STATES SENIOR DISTRICT JUDGE